IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JOANNA M. BUFKIN, *ET AL.***                                                   **PLAINTIFFS**

**V.**                               **CIVIL ACTION NO. 3:18-CV-318-HTW-LRA**

**THE PRUDENTIAL INSURANCE**                               **DEFENDANT**
**COMPANY OF AMERICA**

**REBUTTAL IN SUPPORT OF MOTION TO DISMISS**

Defendant The Prudential Insurance Company of America ("Prudential") files this rebuttal in support of its *Motion to Dismiss* (the "Motion," Dkt. 7), as follows:

**A.  The Prudential Welfare Benefits Plan is an "employee welfare benefits plan" governed by ERISA.**

In their response (Dkt. 9) and memorandum in opposition (Dkt. 11) to the Motion, Plaintiffs first argue that the life insurance plan at issue is not an "employee welfare benefits plan" governed by ERISA. (Pl.'s Mem. in Opp'n, Dkt. 11 at 2-3.) In support, Plaintiffs argue that Mohrman's coverage under Prudential's Group Universal Life Insurance Program (the "GUL Program") converted to a "*Retiree* Life Insurance Program" separate from the GUL Program. Plaintiffs then argue that Prudential's ongoing involvement with the so-called "Retiree Life Insurance Program" was not sufficient to bring the program within ERISA.

This argument lacks any merit.

As to Plaintiffs' first point, Plaintiffs are mistaken that Mohrman converted her coverage under the GUL Program to a so-called "*Retiree* Life Insurance

Program." Instead, after retiring, Mohrman specifically elected to *continue* her coverage under the GUL Program as a portable participant, as opposed to *converting* her coverage to a separate individual policy. As provided in the GUL Program's Certificate of Coverage, attached to the Motion as Exhibit "C," Mohrman had the right to *either* continue coverage under the GUL Program *or* convert the coverage to an individual policy. (*Compare* RJN Certificate of Coverage, Ex. C at pp. 29-20 *with id.* at pp. 18-20.) And as made clear in the Summary Plan Descriptions, a former employee that elects to continue coverage as a portable participant continues to be covered through the same GUL Plan as current employees. (*See* Motion at RJN Ex. A at pp. 14-15; Motion at RJN Ex. B at p. 18.) The former employee's coverage is not converted to a separate "*Retiree* Life Insurance Program," and Plaintiffs cannot provide evidence to the contrary.

Importantly, courts in this circuit and beyond have held that ERISA continues to apply where a former employee *continues* coverage under a group plan, as opposed to converting coverage to an individual policy, regardless of whether the former employee becomes responsible for paying premiums after retirement. *Henderson v. Paul Revere Life Ins.*, 2013 U.S. Dist. LEXIS 64486, at *36 (N.D. Tex. April 19, 2013); *Goldman v. BCBSM Found.*, 2012 U.S. Dist. LEXIS 54469, 2012 WL 1340438, at *4 (E.D. Mich. Apr. 18, 2012); *Mastaler v. Unum Life Ins. Co.*, 2012 U.S. Dist. LEXIS 21725, 2012 WL 579537, at *3 (S.D. Cal. Feb. 22, 2012); *Sullivan v. Paul Revere Life Ins. Co.*, 2010 U.S. Dist. LEXIS 144444, 2010 WL 8510501, at *8-9 (N.D. Ala. May 28, 2010); *Levine v. Transamerica Life Cos.*, 2001 U.S. Dist.

LEXIS 4427, at *7 (E.D. La. April 5, 2001) (citing *Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997) (ERISA governed where policy was not converted but was instead continued under same terms after employee assumed premium payments that were previously funded by employer)).

The case of *Woods v. American United Life Insurance Company* is a pertinent example. In *Woods*, a teacher enrolled in her employer's group life insurance policy. The teacher retired and executed an "Application to Continue/Port or Covert Group Insurance, electing to continue her existing coverage . . . . " 2015 U.S. Dist. LEXIS 153531, at *3 (N.D. Ala. Nov. 13, 2015). The continuation, however, required the teacher to submit premiums directly to the insurer. *Id.* at *4. After her death, the teacher's beneficiary submitted a claim for benefits, the insurer denied the claim, and the beneficiary sued the insurer for bad faith. *Id.* at *1. But the court held that ERISA governed and dismissed the complaint with prejudice. In doing so, the court rejected the beneficiary's argument that the "'individual' or 'personal' continuation policy was no longer subject to ERISA:"

> Plaintiff has cited no authority that supports her contention that when Corine Woods retired, voluntarily elected to continue her life insurance coverage, and paid the premium directly to AUL, her coverage ceased to be part of the AEA group policy and was no longer within the purview of ERISA. Indeed, courts have consistently rejected similar arguments.

*Id.* at *7-9.

*Woods* is directly on point. Mohrman executed a Group Universal life Insurance Option Election Form and elected to continue coverage under the GUL Program. (Motion at RJN Ex. D.) By doing so, Mohrman continued to be covered

3

under the same group plan that she was enrolled in before she retired. Accordingly, Mohrman did not convert her coverage to any so-called "Retiree Life Insurance Program" falling outside of ERISA. While Plaintiffs cite *Demars v. CIGNA Corporation* for the proposition that this Court must examine Prudential's "ongoing administrative and financial ties to the policy" after conversion to determine whether ERISA applies, *Demars* applies to *converted* plans and not *continued* plans.173 F.3d 443, 449-50 (1st Cir. 1999). So long as ERISA governed Mohrman's coverage under GUL Program before retirement, ERISA continued to govern her continued coverage after retirement.

And contrary to Plaintiffs' second point, the GUL Program *is* governed by ERISA. As an initial matter, Plaintiffs incorrectly focus on whether the specific life insurance program at issue (the GUL Program) constitutes an "employee welfare benefits plan." Instead, the inquiry is whether the entire benefits package offered (the Group Plan) constitutes an "employee welfare benefits plan" governed by ERISA. If so, ERISA also governs and preempts state-law claims related to the specific programs offered *under* the benefits package. *See, e.g., House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007).

For example, in *Cockey v. Life Insurance Company of North America*, an employee elected to participate in his employer's voluntary-accident-coverage policy. 804 F. Supp. 1571, 1573 (S.D. Ga. 1992). After his death, the beneficiaries of the policy sued the insurer for bad-faith refusal to pay death benefits. The insurer argued that the claims were preempted by ERISA and moved to dismiss. The

4

beneficiaries responded that the policy at issue, while offered to employees, was not an "employee welfare benefit plan" because the policy was optional and premiums were paid solely by employees. *Id*. In rejecting that argument, the district court noted that the voluntary accident-coverage policy was only one of several benefits offered through a benefits package. *Id*. at 1575. Specifically, the employer offered two group policies—a *basic* accident-coverage policy, for which the employer paid the premiums, and a *voluntary* accident-coverage policy, which offered additional coverage at the employees' own cost. Because the benefits package—as a whole—qualified as an employee welfare benefit plan under ERISA, the voluntary policy offered *under* that plan was also governed by ERISA. *Id*. at 1575 (citing *Shiffler v. Equitable Life Assur. Soc.*, 663 F. Supp. 155, 161 (E.D. Pa. 1986), *aff'd*, 838 F.2d 78 (3d Cir. 1988). Other courts have held the same. *Alloco v. Metro. Life Ins. Co.*, 256 F. Supp. 2d 1023, 1027-28 (D. Ariz. 2003) (holding ERISA governed optional disability benefits offered to employees at their own expense where benefits package, as a whole, constituted an "employee welfare benefit plan"); *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538, 538 (7th Cir. 2000) ("For purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled"); *Gaylor v. John Hancock Mutual Life Ins. Co.*, 112 F.3d 460 (10th Cir. 1997) (same); *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404 (9th Cir. 1995) (same); *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 567 (11th Cir. 1994) (same).

The relevant inquiry, then, is not whether the GUL Program, examined in

isolation, constitutes an employee welfare benefits plan, but whether the Group Plan, as a whole, constitutes a benefits plan governed by ERISA. If so, the GUL Program offered *under* the Group Plan is governed by ERISA, as well.

Here, Prudential's Group Plan is clearly governed by ERISA. The Group Plan clearly exists, Prudential established and maintained the Group Plan to provide benefits to its employees, and, viewed as a whole, the Group Plan falls outside of the Department of Labor's safe harbor—indeed, Plaintiffs have failed to demonstrate that *each* element of the safe-harbor exists, as those elements do not exist:[1]

- Prudential makes contributions. Just for example, the Group Plan contains "core" and "optional" benefits, for which Prudential either pays, or shares in, the cost of coverage. (Mot. at RJN Ex. B at p. 6.)

- While the Group Plan includes additional optional and voluntary benefits, participation in the Group Plan's core benefits is not voluntary, and employees are automatically enrolled. (*Id.* at 6-13.)

- Prudential's "sole function" is not merely to, "without endorsing the program, . . . permit the insurer to publicize the program to employees, without endorsing the plan [or] to collect premiums through payroll deductions." Indeed, Prudential *is* the plan sponsor and plan administrator and has therefore clearly endorsed the Group Plan. (*Id.* at 36.)

Plaintiffs' argument that ERISA does not apply rests on the fact that Mohrman was the named insured, paid the premiums herself, and was responsible for paying the premiums to Prudential. These facts are irrelevant. As made clear in the cases cited above, the fact that Mohrman elected for voluntary coverage, for which she paid the premiums, does not remove the GUL Program from ERISA's

---

[1] The burden of establishing that the safe harbor applies is on the party asserting it, and that party must demonstrate that *all* factors are met. *E.g. Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285 (3d Cir. 2014); *Morris v. Paul Revere Ins. Group*, 986 F. Supp. 872, 878-79 (D.N.J. 1997).

reach. Where an employer's plan offers voluntary insurance coverage, for which the employee pays the premiums directly, *as part of its broader benefits plan*, ERISA controls. *E.g.*, *Cockey*, 804 F. Supp. at 1575; *Alloco*, 256 F. Supp. 2d at 1027; *House*, 499 F.3d at 449-450. Here, the GUL Program is one of many benefits offered under Prudential's broader Group Plan.

Plaintiffs also attempt to trivialize Prudential's involvement in the Group Plan, asserting that Prudential lacks "an ongoing administrative program" in connection with the plan. (Pl.'s Mem. in Opp'n, Dkt. 11 at 4.) Plaintiffs continue that Prudential simply "sold" Mohrman an insurance policy, and Prudential's mere right to terminate and determine benefits upon death is not enough to establish an ERISA plan. But Plaintiffs' ignore the true scope of the Group Plan—which, as noted above, must be examined as a whole—and the realities of Prudential's involvement: The Group Plan provides health care, personal protection, and other welfare benefits, including disability and group legal care benefits; Prudential pays the full cost of coverage for basic life insurance, basic accidental death and dismemberment insurance, business travel insurance, and core disability; Prudential shares in the cost of medical, dental, and vision; and Prudential offers voluntary benefits, including the GUL Program. (Motion at RJN Ex. B at pp. 6-7.) Prudential does not merely hold a right to terminate and determine benefits under the Group Plan. Instead, as the plan sponsor and plan administrator, *Prudential administers the entire Group Plan*—including enrollment, claims, benefits, and so on. (*Id.* at pp. 34-38.) Prudential also submits forms, such as an annual Form 5500,

7

to the Department of Labor. *See House v. Am. United Life Ins. Co.*, 499 F.3d 443, 447 and 449-450 (5th Cir. 2007) (holding that ERISA applied where employer determined eligibility for participation, enrollment, calculation of premiums, and payment of premiums, and noting that the Fifth Circuit has "found sufficient employer involvement to defeat safe harbor in cases where the employer had a lesser degree of administrative involvement than" that.) None of the cases Plaintiffs cite involve a plan as comprehensive as the Group Plan here, or an employer that established itself as the plan sponsor and administrator of such a plan. Plaintiffs cases are, therefore, entirely distinguishable.

Accordingly, the Group Plan here is an "employee welfare benefits plan," and ERISA therefore applies to the Group Plan, as well as the GUL Program offered under the Group Plan. And because Mohrman elected to continue her coverage after retirement, ERISA continued to apply.

**B.    Plaintiffs' claims are preempted by ERISA.**

Plaintiffs next argue that, even if ERISA does apply, it does not preempt the state-law claims Plaintiffs assert here. Specifically, Plaintiffs allege that Mohrman submitted an EFT application to have premiums deducted from her bank account, and that Prudential "misrepresented" the date those deductions would begin. (*See* Pl.'s Mem. in Opp'n, Dkt. 11 at 5.) Plaintiffs then allege that the EFT deductions began after the date Prudential represented, causing Mohrman to miss a payment and causing her coverage to lapse. (*Id.*) Plaintiffs therefore contend that Prudential's misrepresentation is "too tenuous, remote, or peripheral" to "relate to"

an ERISA plan, and that Plaintiffs' misrepresentation claim is, accordingly, not preempted. (*Id.* at 4-6.)[2]

But the Fifth Circuit has rejected this same argument. In *Lee v. E.I. Du Pont de Nemours & Company*, an employer provided a corporate retirement plan that allowed for early retirement with reduced benefits. 894 F.2d 755 (5th Cir. 1990). Rumors were circulating that the employer planned to adopt a new retirement plan that would increase the benefits. A few employees allegedly asked their supervisors whether the rumors were true, which the supervisors denied. Based on these denials, the employees retired early. Nevertheless, after retirement, the employer announced a new early retirement plan with increased benefits. The employees sued their employer for, among other things, fraud and misrepresentation, alleging that, but for the denials, they would not have retired before the new plan was announced. The Fifth Circuit held that ERISA preempted these claims. In doing so, the court first noted that ERISA preempts "any state cause of action that relates to an employee benefit plan, *even if the action arises under general state law that in and of itself has no impact on employee benefit plans*." *Id.* at 756 (emphasis added). Indeed, ERISA preemption "reaches any state law that 'has a connection with or reference to' an ERISA plan." *Id.* (*quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)). The court then held that the plaintiffs' claims certainly "related to" an ERISA plan because the plaintiffs' were seeking, among other things, "benefits to which they would have become entitled but for a misrepresentation by their

---

[2] Aside from misrepresentation, Plaintiffs do not even contest that their remaining state-law claims are preempted.

9

employer . . . ." *Lee*, 894 F.2d at 757. *See also, e.g., Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir. 1989) (holding that misrepresentation claims are preempted by ERISA).

*Lee* is directly on point. Here, as in *Lee*, Plaintiffs have filed suit to recover benefits they allegedly would have received but for an alleged misrepresentation as to the effective date of the EFT deductions (i.e., that but for the misrepresentation, Mohrman would not have missed her premium payment and the policy would not have lapsed). Like *Lee*, this misrepresentation claim is therefore certainly "related to" an ERISA plan, as Plaintiffs are, in fact, suing for benefits.

Plaintiffs cite a handful of cases for the proposition that fraud and misrepresentation claims are not preempted by ERISA, but none of these cases support Plaintiffs' position. In fact, none of those cases involve plan members or beneficiaries suing to recover benefits:

- In *Bank of Louisiana v. Aetna US Healthcare, Inc.*, a bank sued an insurer that had issued the bank a stop-loss policy after the insurer allegedly misrepresented that it would refund the bank for money wrongly drafted from the bank's account. 468 F.3d 237 (5th Cir. 2006). ERISA did not apply, as the insurer was not acting as an ERISA fiduciary in connection with the stop-loss policy.

- In *Blue Cross & Blue Shield of Mississippi v. Sharkey-Issaquena Community Hospital*, an insurer sued a hospital for allegedly submitting claims for services that were not actually performed. 2017 WL 6375954 (S.D. Miss. Dec. 13, 2017).

- Like *Blue Cross*, the case of *Connecticut General Life Insurance Company v. True View Surgery Center One, L.P.*, involved an insurer that sued a health-care provider for fraudulent billing practices in submitting claims. 128 F. Supp. 3d 501 (D. Conn. 2015).

- In *Louisiana Health Services & Indemnity Company v. Rapides*

10

> *Healthcare Systems*, an insurer sought a declaratory judgment that Louisiana's assignment statute was preempted by ERISA, which statute governed reimbursement of insurance benefits that had assigned by patients to health-care providers. 461 F.3d 529 (5th Cir. 2006).

- In *Memorial Hospital Systems v. Northbrook Life Insurance Company*, a hospital sued an insurer under the Texas Insurance Code for deceptive and unfair trade practices for refusing to pay for services rendered to an insured. 904 F.2d 236 (5th Cir. 1990). The court held that ERISA did not preempt this claim, as the hospital was not seeking to recover plan benefits, but was instead seeking independent penalties under the act.

Plaintiffs also argue that Prudential was acting as a "vendor" of life insurance and not an "ERISA entity" when it allegedly misrepresented when EFT payments would begin. Not so. Instead, consistent with the Plan Summary Documents, Prudential was acting as the Group Plan administrator and was administrating the handling of premium payments.[3]

ERISA's preemption provision is construed "extremely broadly," *Kuhl v. Lincoln Nat'l Health Plan*, 999 F.2d 298, 301-302 (8th Cir. 1993), and it is therefore "well settled in the Fifth Circuit that 'state law claims, regardless of how they are pleaded, are preempted if they 'relate to' an ERISA plan.'" *Davis v. AIG Life Ins.*, 945 F. Supp. 961, 967 (S.D. Miss. 1995) (internal citations omitted). Plaintiffs' claims here, as in *Lee*, certainly relate to an ERISA plan and are therefore preempted.

## C. Plaintiffs' state-law claims must be dismissed with prejudice.

Last, Plaintiffs argue that, even if their claims are preempted by ERISA,

---

[3] The fact that Prudential handled and processed the application for EFT payments cuts further against Plaintiffs' position that Prudential lacked administrative ties to the GUL Program.

11

those claims should not be dismissed with prejudice. Instead, Plaintiffs request leave to amend their Complaint to assert claims under ERISA. But regardless of whether this Court allows Plaintiffs to amend their Complaint, any state-law claims that are preempted must still be dismissed with prejudice. *See, e.g., Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, 2012 U.S. Dist. LEXIS 23600, at *10 (S.D. Miss. Feb. 24, 2012) (dismissing state-law claims preempted by ERISA with prejudice); *Wilkinson v. Haworth*, 186 F. Supp. 2d 687, 692 (S.D. Miss. 2002) (same); *Woods v. Am. United Life Ins. Co.*, 2015 U.S. Dist. LEXIS 153531, at *3 (N.D. Ala. Nov. 13, 2015) (same).

**For these reasons**, Prudential requests that this Court grant the Motion and dismiss the claims in the Complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: July 16, 2018.

                              **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

                      By:  /s/ Timothy J. Anzenberger
                            R. Jarrad Garner (MSB No. 99584)
                            Timothy J. Anzenberger (MSB No. 103854)
                            ADAMS AND REESE LLP
                            1018 Highland Colony Parkway, Suite 800
                            Ridgeland, MS 39157
                            Telephone:   601.353.3234
                            Facsimile:   601.355.9708
                            jarrad.garner@arlaw.com
                            tim.anzenberger@arlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to those registered to receive such notice, including:

C. Maison Heidelberg
WATSON HEIDELBERG PLLC
P.O. Box 23546
Jackson, MS 39225-3546
mheidelberg@whjpllc.com

Dated: July 16, 2018.

/s/ Timothy J. Anzenberger
*Of Counsel*
